**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**BRITTANY D.[1]
o/b/o of J.L.J.D., a minor**,

      **Plaintiff,**

   v.

      Civil Action 2:23-cv-1577
      Judge Edmund A. Sargus, Jr.
      Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF
SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Brittany D. brings this action on behalf of J.L.J.D., a minor, under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying J.L.J.D.'s application for Supplemental Security Income ("SSI"). This matter is before the Court on Plaintiff's Statement of Errors (Doc. 9), the Commissioner's response, (Doc. 10), and Plaintiff's reply (Doc. 11). For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**I.   BACKGROUND**

Brittany D. is the mother and guardian of J.L.J.D., a minor, and she filed an application for SSI on J.L.J.D.'s behalf on November 12, 2020, alleging that J.L.J.D. was disabled beginning October 13, 2020, due to attention deficit hyperactivity disorder and Asperger's. (R. at 273-78,

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

286.)² Plaintiff's application was denied initially in June 2021, and upon reconsideration in September 2021. (R. at 189-96, 198-206.) On May 11, 2022, Plaintiff, who was represented by counsel, appeared and testified at a telephone hearing held by an administrative law judge. (R. at 176-87.) On May 27, 2022, administrative law judge Noceeba Southern (the "ALJ") issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 159-75.) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 1-7.)

## II.   RELEVANT RECORD EVIDENCE

The Undersigned has thoroughly reviewed the transcript in this matter, including Plaintiff's educational records, her medical records, function and disability reports and testimony as to her conditions and resulting limitations. Given the claimed error raised by Plaintiff, rather than summarizing that information here, the Undersigned will refer and cite to it as necessary in the discussion of the parties' arguments below.

## III.   ADMINISTRATIVE DECISION

On May 27, 2022, the ALJ issued her decision. (R. at 159-75.) The ALJ applied the sequential evaluation process under the child disability standards and made the following findings of fact and conclusions of law:

1. [Plaintiff] was born . . . [in] 2017. Therefore, she was a preschooler on November 6, 2020, the date application was filed, and is currently a preschooler (20 CFR 416.926a(g)(2)).

2. [Plaintiff] has not engaged in substantial gainful activity since November 6, 2020, the application date (20 CFR 416.924(b) and 416.971 *et seq.*). ***

3. [Plaintiff] has the following severe impairments: attention deficit hyperactivity disorder (ADHD); Asperger's (20 CFR 416.924(c)). ***

---

² For ease of reference, the Court will refer to both Brittany D. and J.L.J.D. as "Plaintiff."

2

    4.    [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926). ***

    5.    [Plaintiff] does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a). ***

    6.    The undersigned finds that [Plaintiff] has not been disabled, as defined in the Social Security Act, since November 6, 2020, the date the application was filed (20 CFR 416.924(a)).

(R. at 163-69.) In determining that Plaintiff's impairments were not functionally equivalent to a listed impairment, the ALJ found:

- <u>less than a marked</u> limitation in acquiring and using information;
- <u>less than a marked</u> limitation in attending and completing tasks;
- <u>less than a marked</u> limitation in interacting and relating with others;
- <u>less than a marked</u> limitation in moving about and manipulating objects;
- <u>less than a marked</u> limitation in the ability to care for himself/herself; and
- <u>no</u> limitation in health and physical well-being.

(R. at 165 (emphasis in original).) The ALJ discussed the functional domains in more detail, but because a finding of one "extreme" limitation or two "marked" limitations is needed in order to support an award of benefits, the ALJ denied Plaintiff's claim. (R. at 166-169.)

## IV. STANDARD OF REVIEW

### A. Child Disability Standards

To qualify for SSI as a child under the age of 18, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. *Id.* An individual under the age of 18 is considered disabled for purposes of SSI "if that individual has a medically

3

determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Social Security regulations set forth a three-step sequential analysis for determining whether a child is disabled for purposes of children's SSI benefits:

1. Is the child is engaged in any substantial gainful activity? If so, benefits are denied.

2. Does the child have a medically severe impairment or combination of impairments? If not, benefits are denied.

3. Does the child's impairment meet, medically equal, or functionally equal any in the Listing of Impairments, Appendix I of 20 C.F.R. pt. 404, subpt. P. 20 C.F.R. § 416.924(a)? If so, benefits are granted.

*See* 20 C.F.R. § 416.924(a)-(d).

The Sixth Circuit has summarized the regulations concerning a child's application for disability benefits as follows:

> The legal framework for a childhood disability claim is a three-step inquiry prescribed in 20 C.F.R. § 416.924. The questions are (1) is the claimant working, (2) does the claimant have a severe, medically determinable impairment, and (3) does the impairment meet or equal the listings? * * * An impairment can equal the listings medically or functionally[.] * * * The criteria for functional equivalence to a listing are set out in § 416.926a. That regulation divides function up into six "domains":
>
> (1) Acquiring and using information;
>
> (2) Attending and completing tasks;
>
> (3) Interacting and relating with others;
>
> (4) Moving about and manipulating objects;
>
> (5) Caring for yourself; and
>
> (6) Health and physical well-being.
>
> § 416.926a(b)(1). To establish a functional impairment equal to the listings, the claimant has to show an extreme limitation in one domain or a marked impairment

4

> in more than one. § 416.926a(d). Lengthy definitions for marked and extreme are set out in § 416.926a(e). Each includes instructions on how to use test results.
>
> "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. § 416.926a (e)(2)(i).
>
> "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean. § 416. 926a (e)(3)(i).

*Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 832 (6th Cir. 2009).

### B. Judicial Standard of Review

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*

*v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices [Plaintiff] on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. ANALYSIS

In the subject action, Plaintiff sets forth one assignment of error: that the ALJ erred by holding "that [Plaintiff's] primary care provider's findings were not persuasive without adequately articulating the factors of supportability and consistency within their decision." (ECF No. 9 at PAGEID ## 669-676.) For the reasons that follow, the Undersigned finds this assignment of error to be well taken.

The governing regulations[3] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 416.913(a)(1)-(5). Objective medical evidence is defined as "medical signs, laboratory findings, or both." 20 C.F.R. § 416.913(a)(1). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 416.913(a)(3). "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you)

---

[3] Plaintiff's application was filed after March 27, 2017. (R. at 273-278.) Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated. *See* 20 C.F.R. §§ 416.913(a), 416.920c.

about any issue in your claim." 20 C.F.R. § 416.913(a)(4). "Medical opinion" is defined as follows:

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . .
>
> (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes . . . .

20 C.F.R. § 416.913(a)(2).

The governing regulations include a section entitled "[h]ow we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. § 416.920c. These regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c(a). Instead, they provide that an ALJ will consider medical source opinions and prior administrative findings using five factors: supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 416.920c(c)(1)–(5).

The regulations explicitly indicate that the "most important factors" to consider are

7

supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Indeed, the regulations require an ALJ to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or decision and allows that the ALJ "may, but [is] not required to, explain how [they] considered" the other factors. 20 C.F.R. § 416.920c(b)(2). If, however, two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," an ALJ must also articulate the other most persuasive factors. 20 C.F.R. § 416.920c(b)(3). In addition, when medical sources provide multiple opinions or multiple prior administrative findings, an ALJ is not required to articulate how he evaluated each opinion or finding individually but must instead articulate how he considered the opinions or findings from that source in a single analysis using the five factors described above. 20 C.F.R. § 416.920c(b)(1). Finally, the regulations explain that the SSA is not required to articulate how it considered evidence from non-medical sources. 20 C.F.R. § 416.920c(d).

The applicable regulations provide the following guidance for how ALJs should evaluate the "supportability" and "consistency" of medical source opinions and prior administrative findings:

> (1)   Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2)   Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2). In practice, this means that the "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021

WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 416.927(c)(3), (4) (differentiating "supportability" and "consistency"); 20 C.F.R. § 416.920c(c)(1), (2) (further clarifying the difference between "supportability" and "consistency" for purposes of the post-March 27, 2017 regulations)).

Against that background, the ALJ discussed the opinion of Anna Purkey, DNP, Plaintiff's primary care provider, as follows:

> Anna Purkey, DNP, found that [Plaintiff] had marked limitation in attending and completing tasks, caring for herself, and moderate limitation in acquiring and using information, interacting with others, and moving about and manipulating objects. These opinions are unpersuasive, as they are inconsistent with the medical evidence of record, which supports less limitations. The opinions are inconsistent with Dr. Johnson's findings as well, who found less limitations, as discussed above. The opinions were also not given in SSA regulatory language for a child case. (marked, less than marked etc.). Regardless, the opinions are not supported by the overall evidence of record; and therefore, are not persuasive.

(R. at 169 (internal citations omitted).)   Plaintiff argues that with this analysis, "the ALJ ignored much of the medical evidence that suggested the necessity of more restrictive limitations and a finding of disability" and that "the ALJ failed to properly consider the mandatory factors of supportability and consistency."  (ECF No. 9 at PAGEID # 670.)

Plaintiff's argument is well taken, at least as to the ALJ's discussion of the supportability factor.  Here, Ms. Purkey opined that Plaintiff had the following limitations:  (1) a marked limitation in attending and completing tasks; (2) a marked limitation in caring for herself; (3) a moderate limitation in acquiring and using information; (4) a moderate limitation in interacting with others; and (5) a moderate limitation in moving about and manipulating objects.  (R. at 169.)  While the Undersigned believes the ALJ arguably did enough to explain why these findings were inconsistent with the record as a whole, this only goes to the *consistency* factor – regardless of the fact that the ALJ presented these opinions as being "not *supported* by the

9

overall evidence of record." (*Id.* (emphasis added).) When it comes to the supportability factor, the ALJ failed to address any of Ms. Purkey's own "relevant evidence" which either may or may not have supported her ultimate opinions. *See* 20 C.F.R. § 404.1527(c)(3).

At most, the Commissioner only points to one piece of "relevant evidence" which the ALJ discussed, which was Ms. Purkey's earlier statement that Plaintiff had made "wonderful" progress. (ECF No. 10 at PAGEID # 688 (citing R. at 168).) But this cherry-picked quote does not support the Commissioner's ultimate argument when presented in its full context, which reads as follows: "[Plaintiff] has made wonderful progress with the family interventions and attention given so far. **Having disability benefits would help them to continue to provide appropriate care of [Plaintiff's] autism**." (*See* R. at 580, 581 (emphasis added).) Far from a statement (or even a suggestion) of non-disability, Ms. Purkey only noted Plaintiff's "wonderful" progress as a silver lining to her overall treatment plan, and Ms. Purkey expressly noted that disability benefits would "help them to continue" with such progress. (*Id.*) The Commissioner has therefore failed to explain how, even when reading the ALJ's opinion as a whole, the Court could possibly find that the ALJ adequately discussed the supportability of Ms. Purkey's opinions.

Given this, it is well settled that the ALJ's failure to discuss the supportability of Ms. Purkey's opinions requires remand, because "without fuller explanation, this court cannot engage in meaningful review of the ALJ's decision." *Reed v. Comm'r of Soc. Sec.*, No. 3:20-CV-02611-CEH, 2021 WL 5908381, at *6 (N.D. Ohio Dec. 14, 2021) (quoting *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at *8 (N.D. Ohio June 3, 2021)); *see also Jacob B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-617, 2022 WL 130761, at *8 (S.D. Ohio Jan. 14, 2022) ("In the absence of a sufficient explanation of supportability and consistency with the record as a

10

whole, the Court cannot conclude that the ALJ's consideration of Dr. Rush's opinion is supported by substantial evidence . . . . Accordingly, the ALJ's decision must be reversed and remanded for further proceedings to properly analyze Dr. Rush's medical opinions pursuant to 20 C.F.R. § 404.1520c."). Accordingly, Plaintiff's assignment of error is well taken.

## VI. CONCLUSION

For these reasons, it is therefore, **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and The ALJ under Sentence Four of § 405(g).

## VII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review of by the District Judge and waiver of the right to appeal the judgment of the District Court. Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . ." (citation omitted)).

**DATED:** <u>July 9, 2024</u>   <u>/s/ *Elizabeth A. Preston Deavers*</u>
**ELIZABETH A. PRESTON DEAVERS**
**UNITED STATES MAGISTRATE JUDGE**